No. 81-233

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

TONGUE RIVER ELECTRIC COOPERATIVE, INC.,
a Montana corporation,

                    Plaintiff and Respondent,

vs.

MONTANA POWER COMPANY, a Montana
corporation,

                    Defendant and Appellant.

_____

Appeal from:  District Court of the Sixteenth Judicial District,
In and for the County of Rosebud
Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

    For Appellant:

        Crowley, Haughey, Hanson, Toole & Dietrich,
         Billings, Montana
        Jack Ramirez argued, Billings, Montana
        John W. Ross, Butte, Montana

    For Respondent:

        Charles W. Jardine argued, Miles City, Montana

_____

             Submitted:  October 20, 1981

              Decided:  November 25, 1981

Filed: NOV 2 5 1981

*Thomas J. Kearney*
_____
                      Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal from the District Court, Sixteenth Judicial District, Rosebud County, where judgment was entered against Montana Power Company to the effect that Tongue River Electric Cooperative had the right to provide electrical services to a subdivision located in Rosebud County, Montana, under section 69-5-105, MCA, and that Montana Power did not qualify to provide such electric services under the provisions of section 69-5-107, MCA.

We reverse the District Court.

.The subdivision is located in Section 33, Township 2 North, Range 41 East, Rosebud County, Montana, where housing is being developed by the Montana Power Company as a part of the townsite expansion of Colstrip. At the time of the hearing, Montana Power owned 80 acres located in section 33, and was in the process of purchasing from Burlington Northern, Inc. an additional 504.75 acres in the same section. Montana Power was already developing housing in the 80 acres first purchased, and electrical service had been installed. The subdivision is related to the Colstrip power production projects, and was undertaken for the purpose of providing housing for Montana Power employees and others associated with the development of the Colstrip power complex. Montana Power employees receive a discount on electric services provided by their employer. As of the date of the hearing, 42 townhouses and 13 single-family dwellings had been completed. The evidence indicated that it would take Tongue River 6 months to 1 year to provide the electric service.

Tongue River contends that Montana Power is starting the subdivision and placing residences and townhouses thereon for the purpose of selling and renting them.

The District Court found that Tongue River had the closest line to the subdivision, crossing a portion of section 33, which now provides service to a business established on that section, outside the town limits of Colstrip, and that the same line extends north to supply services to other customers. It found that Montana Power owns the unincorporated town of Colstrip, coal mines, lands containing coal around the town, the generating plants, and is in the process of constructing additional plants and other property necessary for its generating operation. The District Court found that Colstrip is a rural area that does not have sufficient housing for Montana Power employees and construction workers and for that reason, the company started the construction of a subdivision to provide additional housing for its employees and construction workers on section 33. The subdivision is separated from Colstrip by a state highway.

The Territorial Integrity Act of 1971, section 69-5-101, et seq., MCA, was the result of a settlement of long-standing disputes between the investor-owned utilities and the electrical cooperatives over which electrical supplier would have the right to provide electrical service to new consumers and customers. Succinctly stated, under the act, the electric supplier having a line nearest the "premises" of nonindustrial or noncommercial new consumers has the right to provide the electric service. Section 69-5-105(1), MCA. The nearest electric supplier to such new consumers is determined on the shortest straight line which can be drawn from the conductor nearest the "premises" to the nearest permanent portion of the premises to be served. Montana-Dakota Util. v. Lower Yellowstone (1978), 178 Mont. 427, 433, 585 P.2d 626, 630; section 69-5-105(2), MCA. The act

-3-

contains an exception, however, with regard to industrial, commercial, or other consumers, that "nothing . . . shall restrict the right of an electric supplier to furnish electric service to any property owned by the electric supplier." Section 69-5-107, MCA.

In interpreting the application of section 69-5-107, MCA, the District Court concluded:

". . . This Court holds that 'premises' and 'property' do not have the same meaning. 'Premises,' as used in this Act, does not necessarily mean property owned by an electric supplier. It means property which is owned or used by an electric supplier for commercial or industrial usage as defined by the Act in section 69-5-102(7), MCA, 1979, which provides:

"'(7)"Premises" means a building, residence, structure, or facility to which electricity is being or is to be furnished; provided, that two or more buildings, structures, or facilities which are located on one tract or contiguous tracts of land and are utilized by one electric consumer for farming, business, commercial, industrial, institutional, governmental, or trailer court purposes shall together constitute one premises, except that any such building, structure, or facility, other than a trailer court, shall not, together with any other building, structure, or facility, constitute one premises if the electric service to it is separately metered and the charges for such service are calculated independently of charges for service to any other building, structure, or facility.'

"To hold that section 69-5-107 be given its literal effect would destroy the purpose of the act in this case."

Thus, the District Court, in interpreting section 69-5-107, which states that an electric supplier shall have the right to furnish electric service to "any property" owned by the electric supplier, limited the term "any property" to commercial or industrial usage by the electric supplier.

The insertion of that limited meaning to the term "any property" contravenes the role of courts in interpreting statutes. That role is defined in section 1-2-101, MCA, which states:

-4-

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. . ."

The term "any property" is not ambiguous. It is plain and certain. Where the intention of the legislature can be determined from the plain meaning of the words used, the courts may not go further and apply any other means of interpretation. Haker v. Southwestern Ry. Co. (1978), 176 Mont. 364, 369, 578 P.2d 724, 727; State ex rel. Huffman v. District Court (1969), 154 Mont. 201, 204, 461 P.2d 847, 849.

By statute, when the term "property" is used, it means real and personal property. Section 1-1-205(3), MCA. That code definition is binding on the District Court and on us:

"Whenever the meaning of a word or phrase is defined in any part of this code, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears." Section 1-2-107, MCA.

We find and hold under the facts of this case that Montana Power is entitled to the benefit of the exception contained in section 69-5-107, MCA, to the effect that it may supply "any property" owned by it.

The judgment of the District Court is reversed.

_John C. Shuhy_
　　　　　　　Justice

We Concur:

_Frank D. Haswell_
Chief Justice

-5-

_____Gene B. Daly_____

_____John Conway Harrison_____

_____Daniel J. Shea_____

_____Frank B. Morrison_____

_____
Justices