*260 MR. JUSTICE SHEEHY
delivered the Opinion of the Court.
The District Court, Second Judicial District, Silver Bow County, determined that Lenny Bay, a retired police officer, was entitled to retirement benefits payable on his death to his surviving spouse in monthly payments equal to one-half of his monthly salary when he retired. The defendants, Public Employees’ Retirement Division (PERD) collectively, appeal from a judgment of the District Court to that effect.
Lenny Bay is a retired law enforcement officer. From 1957 to 1977, he was a deputy sheriff for Silver Bow County. In 1977, the Silver Bow County and Butte city governments were consolidated, and the sheriff’s office and city police department were merged. From 1977, until his retirement in 1982, Bay was a member of the new consolidated government law enforcement agency which was deemed a police force under the Metropolitan Police Law of Montana in Butler et al. v. AFSCME and Butte-Silver Bow, Cause No. 63277 (District Court, Second Judicial District, Silver Bow County (1979)).
During his years of employment Bay contributed to three different retirement systems. From 1957 to 1974, he was a member of the Public Employees’ Retirement System (PERS), in which he accumulated 21 years for benefit purposes. Seventeen of those years were obtained through actual service, three were qualified from Bay’s previous military service, and one year was qualified for service in the Works Progress Administration. In 1974, Bay converted his retirement to the newly established Sheriffs’ Retirement System. He transferred his previous 21 years under PERS to this new system, and earned three years of actual service for benefit credits between 1974 and 1977.
Following consolidation of the city and county governments, a suit was brought in District Court, for the Second Judicial District, Silver Bow County, to determine whether law enforcement officers of the new government were sher *261 iffs or municipal policemen. The question was determined in the Butler, supra, decision and since that time Butte-Silver Bow consolidated government and the State of Montana made appropriate adjustments in the retirement programs to reflect the status of Butte-Silver Bow law enforcement officers as policemen. Bay’s last five years of retirement contributions were deposited in the Police Officers’ Retirement Fund. He retired August 1, 1982, with approximately 29 years of combined service for benefit purposes.
Bay’s 24 years of service as a deputy sheriff would not qualify him for sheriff’s retirement benefits, because a 25 year minimum service period is required for receiving benefits under that retirement system. Section 19-7-501(1), MCA. Similarly, Bay’s five years as a policeman do not qualify him for a policeman’s pension, as the minimum service period for eligibility is 20 years. Section 19-9-801(1), MCA. Nevertheless, Bay does qualify for a service retirement benefit under the provisions of Section 19-7-308(1), MCA. The statute provides that:
“(1) A law enforcement officer who has not changed his employment but who has, because of a city-county consolidation, been transferred either from a city police force to a county sheriff’s department or from a county sheriff’s department to a city police force as a law enforcement officer is eligible for a service retirement benefit if his combined service in the Sheriffs’ Retirement System and the municipal Police Officers’ Retirement System satisfies the minimum membership service requirement of the system to which he last made contributions . . .”
Bay’s 29 years of combined service exceeds the minimum service requirement for the system to which he last made contributions, the Police Officers’ Retirement System, so he is entitled to a service retirement benefit under Section 19-7-308(1), MCA.
When Bay applied for his retirement benefits, PERD calculated options to be offered to him under Section 19-7-701, *262 MCA, a statute contained within those defining the Sheriffs’ Retirement System. Under option 1, Bay or his beneficiary, would receive $801 per month, with $599 of that sum derived from the Sheriffs’ Retirement System and $202 taken from the Police Officers’ Retirement System. This plan provides the same monthly retirement for Bay or his beneficiary as long as he or the beneficiary lives. Under option two, Bay would receive $868 per month, with $666 coming from the Sheriffs’ Retirement System and $202 from the Police Officers’ Retirement System. In the event of his death under this plan, his beneficiary would receive a monthly allowance of one-half his monthly benefit, or $434.
Bay insisted that he was entitled to receive benefits under the Police Officers’ Retirement System so that he would receive $956 per month under the provisions of Section 19-9-804, MCA, and that upon his death, his surviving wife would receive one-half of his final average salary, or $782 per month under the provisions of Section 19-9-911(2), MCA.
When Bay’s case came before the PERD, the Division’s proposal for options under the sheriffs’ system was affirmed. Bay petitioned for judicial review of the Board decision. The Department of Administration objected, arguing that a PERD decision is not subject to judicial review as a contested case under the Montana Administrative Procedure Act. The Department indicated that the matter could be brought to the attention of the courts under a petition for relief under the Declaratory Judgment Act. Action was brought in the District Court, and the parties agreed to submit the matter on motions for summary judgment.
The court entered summary judgment in favor of Bay’s contentions, and against PERD, which results in this appeal.
We affirm the decision of the District Court. The statutes clearly provide that Bay’s entitlement to retirement benefits, and the benefits payable to his spouse on his death, are controlled by the Police Officers’ Retirement System.
*263 We noted above, Section 19-7-308(1), MCA, adopted by the legislature in 1979, to provide for police officers’ retirement, prior to or following a city-county consolidation. In addition to Section 19-7-308(1), MCA, which we have above quoted, the same statute goes on to state:
“(2) Eligibility for disability retirement, death benefits, and a refund of contributions is governed by the provisions of the retirement to which the officer last made contributions.
“(3) The service retirement benefit of an officer described in subsection (1) shall be calculated separately for each system based on the service credited under each system. The final salary or final average salary for each calculation shall be based on the highest salary earned while a member of either system. Each system shall pay its proportionate share, based on the number of years of service credited, of the combined benefit. The combined benefit may not exceed 60% of the final salary or final average salary.”
The retirement system to which Bay last made contributions is the Police Officers’ Retirement System for Silver Bow consolidated government. His “death benefits” must then be calculated under the provisions of law applicable to the police system.
“Death benefits,” under the Police Officers’ Retirement System are provided for in Section 19-9-911, MCA. That statute provides in pertinent part:
“(2) Upon the death of a police officer before or after retirement, his surviving spouse, if there is one, shall, as long as such spouse remains unmarried, be paid from the fund a sum equal to one-half of the officer’s final average salary . . .” (Emphasis added.)
There can be no argument but that payment to the surviving spouse under the Police Officers’ Retirement System is classified as a “death benefit.” That is the statutory caption of Section 19-9-911, MCA. There can further be no argument that “death benefits” under Section 19-7-308, MCA, are to be governed by the provisions of the retirement sys *264 tem to which the officer last made contributions. In this case, that is the Police Officers’ Retirement System.
Because of the clear provisions of the applicable statutes, there is no room for statutory interpretation by this Court, by the District Court, nor by PERD. When the intention of the legislature can be determined from the plain meaning of words used in the statute, the courts may not go further and apply any other means of interpretation. Tongue River Elec. Coop v. Mont. Power Co. (1981), 195 Mont. 511, 636 P.2d 862.
In the face of these statutory provisions, which are to us clear as daylight, PERD contends that we should allow computation of Bay’s retirement benefits under the Sheriffs’ Retirement System for these reasons: (1) The provision for consolidated city-county governments is found in the code under the Sheriffs’ Retirement System. (2) The interpretation by PERD of statutes is entitled to great weight and deference from us. (3) The term “eligibility” used in Section 19-7-308(2), MCA, refers only to determine the eligibility of a person for retirement benefits, and not to the method for calculating death benefits. (4) The District Court decision in favor of Bay results in a “windfall” to him, for which the sheriffs’ systems and the police systems are actuarially underfunded.
Section 19-7-308, MCA, is the codification of ch. 122, Section 1, Laws of Montana (1979). In its original form, as adopted by the legislature in 1979, the said ch. 122 provided in Section 3 thereof that a part of the new enactment should be codified in Ch. 7, Title 19, MCA, and another part should be codified in Ch. 9, Title 19, MCA. It is obvious that the legislature made such provisions only for ease of reference as between the systems when law enforcement officers entitled to retirement benefits under a consolidated city-county governmental system were involved. It cannot be construed from directions to the codifier that the legislature intended to interpret differently from what is clearly provided in the substantive provisions of the new *265 enactment.
Although we give deference to the interpretation given a statute by the officers or agency charged with its administration, Dept. of Rev. v. Puget Sound Power and Light Company (1978), 179 Mont. 255, 587 P.2d 1282, this does not mean that courts must rubberstamp any interpretation the agencies may give a statute. Rules of statutory construction have no application if the language of the statute is clear and unambiguous. State ex rel. Swart v. Casne (1977), 172 Mont. 302, 564 P.2d 983. It has always been our rule that it is the province of courts to construe and apply the law as they find it and to maintain its integrity as it has been written by a coordinate branch of the state government. When the terms of the statute are plain, unambiguous, direct and certain, it speaks for itself and there is no room for construction. Chmielewska v. Butte and Superior Mining Company (1927), 81 Mont. 36, 361 P. 616.
We cannot regard the provisions of Section 19-7-308(2), MCA, as merely a provision for eligibility, as distinguished from the calculation of death benefits. The eligibility of a surviving spouse under the Sheriffs’ Retirement System depends on the will of the retiring officer. He has the option of designating a beneficiary, Sections 19-7-602, 19-7-701, MCA, and if he chooses not to exercise such an option, the surviving spouse is not eligible for benefits. Under the Police Officers’ Retirement System the surviving spouse is eligible for benefits without any action on the part of the retiring officer designating the spouse as a beneficiary. Section 19-9-911, MCA. Since the right of a surviving spouse of a police officer under the Police Officers’ Retirement System to benefit is a matter of statutory right and not subject to the whim of the retiring officer, Section 19-7-701, MCA, cannot be used to foreclose the spouse’s eligibility for death benefits under the Police Officers’ Retirement System. It is eminently clear that Section 19-7-308(2), MCA, provides that the provisions for death benefits shall be governed by the laws applicable under the retirement *266 system to which the officer last made contributions.
We are buttressed in our opinion that Section 19-7-308(2), MCA, applies to calculations of death benefits by the provisions that follow in subsection (3) of the same statute. It is there provided that “the final salary or final average salary for each calculation shall be based on the highest salary earned while a member of either system.” (Emphasis added.) There is no provision in the Sheriffs’ Retirement System for the use of a “final average salary” in the determination of benefits under the Sheriffs’ Retirement Act. The only place that the term “final average salary” can be found is in Section 19-9-911, MCA, pertaining to the calculation of the death benefit payable to the spouse of a retired police officer. The distinction is that the retirement benefits payable to a retired sheriff’s officer or a retired police officer is based upon his final salary. The determination of the death benefit payable to the surviving spouse of a police officer, however, is based upon his “final average salary.” When the legislature included the term “final average salary” in Section 19-7-308(3), MCA, providing for persons retiring from city-county consolidated governments, it necessarily had in mind that in calculating the death benefits for the wife of a police officer, the final average salary, and riot the final salary of the officer is used. If the contention of PERD in this case were to be upheld, there would never be an occasion in calculating death benefits to refer to the “final average salary” of the retired officer. We are confident the legislature did not intend such a result.
The final arguments made by PERD are that the increased benefits to the wife and to Bay result in a “windfall” to him, and that the systems are underfunded to pay the benefits provided under the Police Officers’ Retirement System to Bay. It is incomprehensible that PERD detects a “windfall” if it is required to treat Bay as it would treat any other retired police officer in determining his retirement benefits and death benefits. He will be receiving what the law provides for persons in his situation, and the difference *267 between his lawful entitlement and what PERD offered to pay would barely pay his heating bill in winter months. If it is a windfall, it is minuscule.
As for the argument that the sheriffs’ and police retirement systems will be actuarially underfunded if we permit Bay’s retirement benefits to be calculated under the Police Officers’ Retirement System, it need only be said that it is the business of PERD to advise the legislature with respect to provisions for funding the systems. In fact, the enactment of the provisions here cited relating to officers retiring from city-county consolidated government law enforcement agencies is the result of PERD action before the legislature. It is unseemly that the same agency would now argue that the legislation which it spawned and sponsored results in actuarial underfunding. The legislature foresaw that underfunding might result from its establishment of a statewide Police Officers’ Retirement System and provided in Section 19-9-503(7), that if underfunded liabilities against cities resulted from a prior plan, amortized payments to make up the unfunded liability must be made by the state auditor after July 1, 1985, from the premium taxes on insurance risks enumerated in Section 19-11-512, MCA.
We affirm the District Court.
MR. JUSTICES MORRISON, HARRISON and SHEA concur.