No. 95-425

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

FARMERS ALLIANCE MUTUAL INSURANCE
COMPANY, a Kansas Insurance corporation,

Plaintiff and Appellant,

v.

KRISTI HOLEMAN, Personal Representative
of the Estate of Gary Lee Leonard, Deceased,

Defendant and Respondent.

CERTIFIED QUESTION FROM:

The United States District Court for the District
of Montana, Billings Division, The Honorable Jack
D. Shanstrom presiding

COUNSEL OF RECORD:

For Appellant:

Robert Savage; Habedank, Cumming, Best & Savage,
Sidney, Montana (argued for Farmers Alliance)

For Respondent:

Donald D. Sommerfeld; Towe, Ball, Enright,
Mackey & Sommerfeld, Billings, Montana (argued for
Kristi Holeman, Personal Representative)

For Amicus:

Peter F. Habein; Crowley, Haughey, Hanson,
Toole & Dietrich, Billings, Montana (argued for
Mountain West Farm Bureau Mutual Insurance Company)

Susan P. Roy; Garlington, Lohn & Robinson, Missoula,
Montana (argued for Alliance of American Insurers)

Gene R. Jarussi; Jarussi & Bishop, Billings, Montana
(argued for Montana Trial Lawyers Association)

FILED

Filed: SEP 25 1996

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Heard:       May 28, 1996
Submitted:   June 25, 1996
Decided:     September 25, 1996

Justice W. William Leaphart delivered the Opinion of the Court.

The United States District Court for the District of Montana, Billings Division, has certified the following question to this Court pursuant to Rule 44, M.R.App.P. We answer the certified question "no."

The certified question is:

Section 33-23-203, MCA, prohibits the stacking of the uninsured motorist coverage available under a policy of motor vehicle liability insurance. Does Section 33-23-203, MCA, prohibit the stacking of the medical payment coverage and the underinsured motorist coverage available under a policy of motor vehicle liability insurance where a premium is charged for coverage of each motor vehicle listed within that policy?

In the insurance policy at issue, a premium is charged on each motor vehicle listed within the policy for medical payment coverage and a premium is charged on each motor vehicle listed within the policy for underinsurance coverage. The premium for the underinsured motorist coverage is included as part of the premium for the uninsured motorist coverage.

In its Order Certifying Question to the Supreme Court of Montana, the District Court submitted a statement of agreed facts. The facts that this Court finds dispositive of the question are as follows:

4. That, at approximately 0450 hours, on November 9, 1991, a vehicle insured by the Plaintiff under the policy issued to Wade and Diana Brown, namely a 1971 Ford pickup with VIN F10GKL66406, being driven by Lori Watson, in which Scott Hankel and Gary Lee Leonard were passengers, was involved in a one-vehicle accident in Jefferson County, Montana, on Interstate 90 at milepost 233.4, 15.6 miles west of Whitehall, Montana.

5. Subsequent thereto, at approximately 0510 hours, at [sic] 1983 Ford pickup truck, VIN 1FTHF26L5DPA15458, owned by Darrel M. Storey and driven by Darrel Maynard Storey, Jr., was traveling east on Interstate 90 when the driver lost control of the vehicle as he attempted to

slow for the accident scene and went into a sideskid. The Storey vehicle struck the right rear corner of the trailer attached to the subject 1971 Ford pickup, VIN F10GKL66406. Such contact pushed the trailer into the ditch and onto its left side. The Storey vehicle then rapidly rotated. Mr. Leonard's coat became entangled on the hitch of the Storey pickup which caused Mr. Leonard to be dragged under the Storey vehicle until after it went backwards into the ditch on the south side of the road. Mr. Leonard died as a result of the injuries sustained.

6. The Storey vehicle was insured by State Farm Auto Insurance Company under Policy No. 138 6224-405-226 and State Farm subsequently paid out its policy limits under the liability portion of its policy limits in the amount of $25,000.

7. Prior to signing a Release, the Estate of Gary Lee Leonard made demand upon Plaintiff for the uninsured (underinsured) motorist coverage and auto medical payment coverage provided for in the Business Auto Policy of Wade and Diana Brown.

8. Plaintiff has refused to make any payments of uninsured (underinsured) motorist coverage and auto medical payment coverage to the heirs and/or Estate of Gary Lee Leonard, deceased.

. . . .

Answering the question certified by the United States District Court requires this Court to construe § 33-23-203, MCA. In construing a statute, "the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. The rules of statutory construction require the language to be construed according to its plain meaning. Stratemeyer v. Lincoln County (Mont. 1996), 915 P.2d 175, 178, 53 St.Rep. 245, 250 (citing Clarke v. Massey (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088). If the language is clear and unambiguous, then no further interpretation is required; we will resort to legislative history only if the intent cannot be

3

determined from the plain wording of the statute. Clarke, 897 P.2d at 1088. Where the intention of the legislature can be determined from the plain meaning of the words used in a statute, the courts may not go further and apply other means of interpretation. Clarke, 897 P.2d at 1088 (citing Tongue River Elec. Coop. v. Montana Power Co. (1981), 191 Mont. 511, 515, 636 P.2d 862, 864).

The question certified is a narrow one. We are asked only to determine whether § 33-23-203, MCA, prohibits the stacking of "optional" coverages--here, the medical payments and underinsurance coverages. We do not consider whether the terms of the insurance contract prohibit stacking. Rather, our analysis is confined to an interpretation of § 33-23-203, MCA. Accordingly, this Court's recent decision in Chilberg v. Rose (1995), 273 Mont. 414, 903 P.2d 1377, is not controlling in this case as Chilberg is a multiple policy case and does not interpret § 33-23-203, MCA. In addition, we note that Sayers v. Safeco Ins. Co. of America (1981), 192 Mont. 336, 628 P.2d 659, cited with approval in Chilberg, is contrary to § 33-23-203, MCA, as Sayers approved the stacking of uninsured motorist coverage under a single policy. Thus, under § 33-23-203, MCA, Sayers is no longer good law because under the terms of § 33-23-203, MCA, stacking of uninsured motorist coverage for multiple vehicles insured under a single policy is expressly prohibited unless the policy specifically provides otherwise. Section 33-23-203, MCA, provides:

> (1) Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under any such policy, including the limits of liability under uninsured motorist coverage,

4

must be determined as follows, regardless of the number of motor vehicles insured under the policy:

  (a) the limit of insurance coverage available for any one accident is the limit specified for the motor vehicle involved in the accident;

  (b) if no motor vehicle insured under the policy is involved in the accident, the limit of insurance coverage available for any one accident is the highest limit of coverage specified for any one motor vehicle insured under the policy; and

  (c) the limits of coverage specified for each motor vehicle insured under the policy may not be added together to determine the limit of insurance coverage available under the policy for any one accident.

  (2) A motor vehicle liability policy may also provide for other reasonable limitations, exclusions, or reductions of coverage which are designed to prevent duplicate payments for the same element of loss.

From the language of the statute, it is clear that "stacking" is not allowed "unless a motor vehicle liability policy specifically provides otherwise." It is equally clear that the "anti-stacking" provisions of the statute apply to a "motor vehicle liability policy" (MVLP). The term MVLP is defined in § 33-23-204(2), MCA, as "any policy of automobile or motor vehicle insurance against liability *now or hereafter required* under Title 61, chapter 6, parts 1 and 3." (Emphasis added.)

The dissenters argue that § 33-23-204(2), MCA, refers to required "policies" rather than required "coverages." It makes no sense, however, to discuss "policies" in a vacuum. A policy of insurance is nothing more than the coverages which are provided within the policy. In § 33-23-204(2), MCA, the legislature was obviously correlating the anti-stacking statutes with the fact that policies with specific types of coverage are required by Title 61, chapter 6, parts 1 and 3. In particular, the per person, per vehicle and property damage coverages mandated by § 61-6-103(2),

5

MCA.

In interpreting § 33-23-204(2), MCA, three points are apparent; it is directed at insurance *against liability*. Secondly, it is directed at insurance coverage which is "required" by law; and finally, it is concerned with liability insurance which is not only required, but is required by <u>both</u> part 1 and part 3. There are only three variations of insurance coverage which meet the above criteria; that is, liability coverage which is required by both the MVSRA and the Motor Vehicle Liability Act. Those three coverages are the per person, per vehicle and property damage coverages which are required by § 61-6-103(2), MCA, and which are incorporated into the Motor Vehicle Liability Act by § 61-6-301, MCA. Unlike the third-party coverage mandated by MVSRA and the Motor Vehicle Liability Act, underinsurance and medical payment do not qualify as insurance *against liability*. Rather, underinsurance and medical pay coverage are designed to protect the first party insured. Furthermore, there is nothing in MVSRA, the Motor Vehicle Liability Act or Title 33, chapter 23, MCA, which would "require" underinsurance and medical pay coverage. To the contrary, the MVSRA specifically excludes coverages which are in excess of the required per person, per vehicle and property damage coverage.

The MVSRA, § 61-6-103(8), provides as follows:

> Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy, and the excess or additional coverage is not subject to the provisions of this part. With respect to a policy which grants the excess or additional coverage, the term "motor vehicle liability policy" applies only to that part of

6

the coverage which is required by this section.

As Justice Erdmann's dissent points out, the above provision specifically refers to coverage which is required "by this section." Although "this section" refers to the MVSRA, the Motor Vehicle Liability Act has also incorporated those same "coverage" requirements; $25,000 because of bodily injury to any one person, $50,000 for bodily injury in any one accident, and $10,000 for property damage. There is nothing in the Motor Vehicle Liability Act which would suggest that the liability coverage requirements incorporated from MVSRA are any broader than those required under MVSRA. Since MVSRA specifically does not require any excess or additional coverage such as underinsurance, it is reasonable to conclude that the Motor Vehicle Liability Act likewise treats medical pay coverage and underinsurance as in "excess" or in addition to the coverages which are specifically required by both Acts in question. Title 61, chapter 6, parts 1 and 3.

As medical payment coverage and underinsured motorist coverage are "excess or additional coverage" which are not required under either the MVSRA or the Motor Vehicle Liability Act, we determine that these coverages are not part of the MVLP under § 33-23-204(2), MCA. Accordingly, the prohibition against stacking required coverages in § 33-23-203, MCA, does not apply to underinsurance and medical payment coverage.

This Court has recognized that "Montana has no statutory insurance requirement concerning underinsured motorists." Grier v. Nationwide Mut. Ins. Co. (1991), 248 Mont. 457, 458-59, 812 P.2d

7

347, 349. While coverage in excess of the minimum amounts mandated by § 61-6-103(2), MCA, and additional coverages such as comprehensive, underinsured, medical payments, or towing may be purchased by the insured, the mandate of Title 61, chapter 6, part 1, MCA, and the term MVLP apply only to the third-party liability coverage required by § 61-6-103(2)(b), MCA.

Section 33-23-201, MCA, requires that the insurer offer first-party, uninsured motorist coverage in the same amounts as required for third-party coverage under § 61-6-103, MCA. The distinction between the uninsured motorist coverage and the third-party coverage is that by rejecting the uninsured coverage the insured may waive the first-party uninsured coverage benefitting himself, but he cannot waive the minimum liability coverages benefitting the third-party. Importantly, however, in the absence of the insured affirmatively rejecting the coverage, the policy is issued with the uninsured motorist coverage. Accordingly, under Montana's statutory scheme the minimum third-party liability coverages under § 61-6-103(2)(b), MCA, and the minimum first-party, uninsured motorist coverage under § 33-23-201, MCA, are required coverages.

Section 33-23-203, MCA, initially references the MVLP and coverage available under such a MVLP policy and continues: "including the limits of liability under uninsured motorist coverage." This latter inclusion of uninsured motorist coverage was necessary because uninsured motorist coverage is not required as part of the MVLP. Uninsured motorist coverage is, nonetheless, a coverage which is required by § 33-23-201, MCA, subject to

8

rejection by the insured. Accordingly, we determine that the "anti-stacking" provision of § 33-23-203, MCA, applies only to those coverages required under the MVLP or § 33-23-201, MCA.

Farmers Alliance argues that the "available coverage" language in § 33-23-203, MCA, is broader than the required coverages and that the statute includes underinsurance coverage. We reject this argument. The only insurance coverage available under both part 1 and part 3, as the MVLP has been restrictively defined by the legislature, is the minimum third-party coverage required by § 61-6-103(2)(b), MCA. This definition of "available coverage" follows because the term MVLP does not encompass any other "excess" or additional coverage. Section 61-6-103(8), MCA. The limits of coverage available under any such policy must refer to the required third-party minimum coverages, required under both parts 1 and 3 of Title 61, chapter 6. Furthermore, "uninsured motor vehicle" is defined in § 33-23-201, MCA, which provides that "[a]n uninsured motor vehicle is a land motor vehicle, the ownership, the maintenance, or the use of which is not insured or bonded for bodily injury liability at the time of the accident." This definition does not include "underinsured motor vehicle" within its terms.

Although Farmers Alliance asserts that this Court's opinion in Grier holds that underinsured coverage is part of the uninsured motor vehicle coverage, we determine that Grier is distinguishable. Our holdings in Grier were based upon an interpretation of the policy language and are not controlling as a matter of statutory

9

construction. In Grier, we stated that "under these circumstances, the "underinsured" coverage is part of the uninsured motor vehicle coverage." Our holding, however, was prefaced with the caveat "under these circumstances." We recognized that the "unique fashion" of the Grier policy was determinative. We noted that "the insurance policy in this case [Grier] is set up in a unique fashion. . . the "underinsured" motorist provision is part of the section on uninsured motorist coverage. . . there is no separate policy section providing for underinsured motor vehicle coverage." Grier, 812 P.2d at 349. In addition, we noted that "the declarations page makes no mention whatsoever of underinsured motor vehicle coverage." Grier 812 P.2d at 349. Most importantly, we were interpreting the language of the Grier policy--not the statute. Here, however, our conclusion is based on § 33-23-203, MCA. Further, unlike the policy at issue in Grier, the instant policy sets forth the underinsurance coverage on the declarations page. We determine that Grier is not determinative on this issue as it interpreted the insurance contract, not § 33-23-203, MCA.

The legislature has mandated that motor vehicle liability policies provide two types of coverage: coverage for injury to third-parties, Title 61, chapter 6, parts 1 and 3, and first party coverage for uninsured motorists, § 33-23-201, MCA. Likewise, the legislature has provided that, absent contractual language to the contrary, such required coverages cannot be "stacked" when numerous vehicles are insured under one policy. Section 33-23-203, MCA. The question of whether excess or additional coverages, such as

10

underinsurance coverage, can be stacked was left as a matter of policy interpretation.

Accordingly, we answer the certified question in the negative. Section 33-23-203, MCA, does not prohibit the stacking of the medical payment coverage and the underinsured motorist coverage available under a policy of motor vehicle liability insurance where a premium is charged for coverage of each motor vehicle listed within that policy.

_W. William Leaphart_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_____

_William E. Hunt Sr_

_Terry Trieweiler_

_____

_____
Justices

Justice James C. Nelson specially concurs.

I concur in our answer to the certified question. In doing so, I also agree with Justice Gray that the statutes at issue are neither a model of clarity nor do they track well. If anything, that is an understatement. As demonstrated by the Court's opinion and by the dissents, reasonable interpretations lead to diametrically opposed results. Whether one interpretation is more "absurd" than the other is more a function of perception than it is logic.

One thing, however, is obvious: if the legislature wanted to prohibit the stacking of underinsured and med-pay coverage, it could have simply said so in § 33-23-203, MCA. It had no trouble saying that with respect to uninsured coverage. It could have used an equally simple, clear and unambiguous approach to underinsured and med-pay coverage. The fact is it did not, and we are, thus, left with the task of trying to make sense out of a mishmash of overlapping statutes, adopted and amended at different times and, with one possible exception, absent any clear unifying rationale.

That possible exception is, as our opinion points out, where the legislature has explicitly or implicitly mandated third-party or first-party coverage, it has clearly prohibited stacking, absent agreement between the insurer and the insured. Where, on the other hand, it has not statutorily mandated coverage in one fashion or another, the legislature has not clearly prohibited stacking.

Finally, I note that, if in discharging our task of statutory interpretation, the majority has erred on the side of the insured,

12

then, our opinion is at least consistent with this Court's historical approach in numerous other insurance cases wherein we have enforced Montana's strong public policy favoring coverage where either the policy language or the law was not clear. See Leibrand v. Nat. Farmers Union (1995), 272 Mont. 1, 6, 898 P.2d 1220, 1223; Wellcome v. Home Ins. Co. (1993), 257 Mont. 354, 358, 849 P.2d 190, 192-93; Head v. Central Reserve Life (1993), 256 Mont. 188, 200, 845 P.2d 735, 742.

_____
Justice

13

Justice Charles E. Erdmann dissenting.

I respectfully dissent.

Initially, it is important to note that in its discussion of the certified question, the majority has omitted Agreed Fact No. 3 contained in the Order Certifying Question, which provides:

> That on or about May 31, 1991, Plaintiff issued to Wade and Diana Brown, the named insured and parents of Scott Hankel, a policy of auto insurance, a true, correct, and complete copy of which is marked "Exhibit A" attached hereto and incorporated herein by reference.

Thus, although the certified question from the Federal District Court is somewhat narrow, it is also clear that both the parties and the Federal District Court contemplated that this Court address the certified question with reference to and in the context of the provisions of the specific insurance policy in this case. While resolution of the certified question requires an analysis of the language of § 33-23-203, MCA, such an analysis should not be in a vacuum separate and apart from the policy involved in the case.

After narrowing an already narrow certified question, the majority embarks on a strained statutory construction analysis to reach its ultimate result. The majority correctly sets forth the rules upon which this Court relies when construing a statute. If the statutory language is clear and unambiguous, then no further interpretation is required. Clarke v. Massey (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088. Where the intention of the Legislature can be determined from the plain meaning of the words used in a statute, the courts may not go further and apply any

14

other means of interpretation. Clarke, 897 P.2d at 1088 (citing Tongue River Elec. Coop. v. Montana Power Co. (1981), 195 Mont. 511, 515, 636 P.2d 862, 864). Under this framework, I would hold that the clear language of § 33-23-203, MCA, prohibits the stacking of underinsured motorist and medical payment coverages.

Section 33-23-203(1), MCA, provides that:

> Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under any such policy, including the limits of liability under uninsured motorist coverage, must be determined as follows, regardless of the number of motor vehicles insured under the policy:
> (a) the limit of insurance coverage available for any one accident is the limit specified for the motor vehicle involved in the accident;
> . . . .
> (c) the limits of coverage specified for each motor vehicle insured under the policy may not be added together to determine the limit of insurance coverage available under the policy for any one accident.

The majority opinion focuses on the term "motor vehicle liability policy" (MVLP) as it is used in § 33-23-203(1), MCA. As noted by the majority, MVLP is defined in § 33-23-204(2), MCA, as any policy required under Title 61, Chapter 6, Parts 1 and 3. The majority opinion ignores the reference to Part 3 and improperly imposes the restricted definition of MVLP in Part 1 to § 33-23-203, MCA.

It is important to understand the different purposes of Parts 1 and 3 of Title 61, Chapter 6, MCA, which are referenced in § 33-23-204(2), MCA. Part 1 is the Motor Vehicle Safety-Responsibility Act (MVSRA) which was enacted to require that drivers who have had an accident involving a motor vehicle, or

15

drivers who have an outstanding unsatisfied judgment against them as the result of a motor vehicle accident, provide proof of financial responsibility. Proof of financial responsibility requires proof of an MVLP as defined in § 61-6-103, MCA. See Boldt v. State Farm Mutual Auto Ins. Co. (1968), 151 Mont. 337, 443 P.2d 33.

Section 61-6-103, MCA, defines MVLP for purposes of the MVSRA and provides, in pertinent part, as follows:

(1) A "motor vehicle liability policy", as the term is used in this part, means an owner's or operator's policy of liability insurance, certified as provided in 61-6-133 or 61-6-134 as proof of financial responsibility and issued, except as otherwise provided in 61-6-134, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

(2) The owner's policy of liability insurance must:
. . . .
(b) insure the person named therein and any other person, as insured, using any motor vehicle or motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each motor vehicle, as follows:
(i) $25,000 because of bodily injury to or death of one person in any one accident and subject to said limit for one person;
(ii) $50,000 because of bodily injury to or death of two or more persons in any one accident; and
(iii) $10,000 because of injury to or destruction of property of others in any one accident.

(8) Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy, and the excess or additional coverage is not subject to the provisions of this part. With respect to a policy which grants the excess or additional coverage, the term

16

"motor vehicle liability policy" applies only to that part of the coverage which is required by this section.

(Emphasis added.)

The majority relies on subsection (8) to conclude that since underinsured motorist and medical payment coverages are not included in subsection (2)(b), they are not part of an MVLP under § 33-23-203(1), MCA. If the majority was only construing § 61-6-103, MCA, they would be correct in their interpretation. However, in the present case the Federal District Court has requested our interpretation of § 33-23-203, MCA. When several statutes apply to a given situation, this Court's job is to adopt a construction that will give effect to all. Section 1-2-101, MCA; See also Schuman v. Bestrom (1985), 214 Mont. 410, 693 P.2d 536.

The definition of MVLP in § 61-6-103(1), MCA, applied by the majority to § 33-23-203, MCA, is restricted by its own terms to Part 1 of Chapter 6 and to only those policies certified under §§ 61-6-133 or -134, MCA, for individuals who are required to provide proof of financial responsibility.[1] See § 61-6-131, MCA. The language of § 61-6-103(8), MCA, reasonably construed, means

---

[1] The majority relies on § 1-2-107, MCA, as authority to apply the definition of MVLP in the MVSRA in Title 61 to the anti-stacking statute in Title 33. Section 1-2-107, MCA, provides, however, that the definition of a phrase in one part of the code may be applied to the same phrase in another part "except where a contrary intention plainly appears." Here, the plain language of § 61-6-103(1), MCA, restricts the definition of MVLP "as the term is used in this part" and then only for policies certified under §§ 61-6-133, -134, MCA. It would be difficult to envision a clearer expression of legislative intent. The Legislature intended that the definition of MVLP in § 61-6-103(1), MCA, be restricted to the MVSRA.

that the strict requirements of the MVSRA apply to the liability coverage required by subsection (2)(b), but not to the additional or excess coverages available in a policy certified for a "bad driver."[2]

This construction is further supported by reviewing Part 3 of Chapter 6 which contains the mandatory liability limits for all Montana drivers. As noted, § 33-23-204(2), MCA, defines MVLP as any policy required under Title 61, Chapter 6, Parts 1 and 3. Policies can be issued under either Part 1 or Part 3 and the two parts are independent. See Transamerica Ins. Co. v. Royle (1983), 202 Mont. 173, 656 P.2d 820.

Part 3 of Chapter 6 references and incorporates only the liability limits contained in § 61-6-103, MCA, and the remaining provisions of the MVSRA are not incorporated into Part 3. If, therefore, a policy is issued under Part 3, it is not subject to the provisions of Part 1. See Boldt, 443 P.2d at 35-36; Transamerica, 656 P.2d at 822-23. The facts included with the certified question do not reflect that the policy was issued under Part 1, and it is apparent from the policy itself that it was issued under Part 3. I therefore believe the majority's conclusion that the definition of MVLP in the MVSRA applies in its entirety to

---

[2] Policies issued under the MVSRA (Part 1) contain a number of restrictions not found in policies issued under the mandatory liability provisions (Part 3). For instance, under the MVSRA the liability of the insurer is absolute after an accident occurs and there are restrictions as to cancellation and increasing premiums. See § 61-6-103(6)-(7), MCA.

§ 33-23-203, MCA, is in error and ignores the reference to Part 3 in § 33-23-204(2), MCA.

In my view § 61-6-136(1), MCA, conclusively establishes that the Legislature intended the definition of MVLP in the MVSRA apply only to policies issued under the MVSRA:

> **Other policies not affected.** (1) This part [part 1] shall not be held to apply to or affect policies of automobile insurance against liability which may now or hereafter be required by any other law or this state . . . .

Here the policy was issued under Part 3 and the restrictive definition of MVLP in Part 1 clearly was not intended to apply to policies issued under the part requiring mandatory liability limits for all drivers.

Even if an MVLP under § 33-23-203, MCA, was as limited as the majority holds, the clear language of § 33-23-203, MCA, still leads to the conclusion that the statute prohibits stacking of underinsured motorist and medical pay coverages. Section 33-23-203(1), MCA, provides that stacking is prohibited for insurance coverage "<u>available</u> under any such [MVLP] policy." (Emphasis added.) The Legislature did not prohibit stacking for insurance coverage "required" by the policy, which according to the majority is only the liability limits found in § 61-6-103(2)(b), MCA, but rather, prohibited stacking for coverages "available" under the policy.

Under the plain language of § 33-23-203, MCA, stacking of both medical payment and underinsured motorist coverages is prohibited

19

since both were "available" under the policy. Where the language of a statute is plain, unambiguous, and certain, the function of the court is simply to ascertain and declare what is in terms or substance contained therein, and not to insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA. See also Reese v. Reese (1981), 196 Mont. 101, 637 P.2d 1183.

Further, the majority's conclusion that an MVLP policy, as it is used in § 33-23-203, MCA, is limited to the $25,000/$50,000/ $10,000 requirements of § 61-6-103(2)(b), MCA, is simply not consistent with the other language of § 33-23-203, MCA. Section 33-23-203(1), MCA, provides that stacking is prohibited for insurance coverage "available under any such [MVLP] policy including limits of liability under uninsured motorist coverage." (Emphasis added.) Under the majority's interpretation, an MVLP includes only the financial limitations found in § 61-6-103(2)(b), MCA. Clearly, uninsured motorist coverage is not required by that provision, but is specifically recognized by the Legislature as being available under an MVLP.

In an effort to avoid this clear statutory language, the majority concludes that uninsured coverage is required coverage. Uninsured coverage, to the degree it is required, is not required by Part 1 of Chapter 6, Title 61, MCA, but rather by § 33-23-201, MCA.[3] The language in § 61-6-103(8), MCA, relied upon by the

---

[3] In Kemp v. Allstate Ins. Co. (1979), 183 Mont. 526, 535, 601 P.2d 20, 25, this Court, in a stacking case predating § 33-23-203, MCA, held that: "Montana's uninsured motorist statute is not

20

majority, clearly states that when a policy grants coverage in excess of the coverage required by an MVLP, the term MVLP "applies only to that part of the coverage <u>which is required by this section</u>." (Emphasis added.) Since uninsured coverage is not required by § 61-6-103, MCA, the majority's logic breaks down.

Finally, the phrase "including the limits of liability under uninsured motorist coverage" in § 33-23-203, MCA, also demonstrates that the Legislature intended that the stacking prohibition apply to coverages other than those required by § 61-6-103(2)(b), MCA, and uninsured motorist coverage. The term "including" is not a limiting term, but instead is used as an illustrative device. A number of courts have held that the term "including" used in similar contexts is not all-inclusive. <u>See</u> Phelps Dodge Corp. v. National Labor Relations Bd. (1941), 313 U.S. 177, 61 S. Ct. 845, 85 L. Ed. 1271; Federal Land Bank of St. Paul v. Bismarck Lumber Co. (1941), 314 U.S. 95, 62 S. Ct. 1 86, L. Ed. 65; Schwab v. Ariyoshi (Haw. 1977), 564 P.2d 135; Connerty v. Metropolitan Dist. Comm'n (Mass. 1986), 495 N.E.2d 840; Cumberland Reclamation v. Secretary Dep't of Interior (6th Cir. 1991), 925 F.2d 164. <u>See also</u> 2A C. Sands, <u>Sutherland Statutory Construction</u> § 47.23 at 194 (4th ed. 1984).

---

mandatory, in the sense that the insured has the right to reject in writing such coverage in policies issued in Montana." The majority's holding in this case that uninsured motorist coverage is required coverage is in direct conflict with our holding in <u>Kemp</u>.

This Court's prior decisions in this area are admittedly confusing and the majority adds to that confusion by distinguishing several cases that clearly apply to this situation. The majority attempts to distinguish this case from Grier v. Nationwide Mutual Insurance Co. (1991), 248 Mont. 457, 812 P.2d 347, on the basis that in Grier we interpreted the policy, while here we are restricted to interpreting the statute. As noted earlier, I believe the majority has improperly narrowed the issue presented by the Federal District Court to exclude any consideration of the policy language. By referencing the policy provisions in the certified question and by attaching a copy of the policy to the certified question, both the Federal District Court and the parties intended that we consider the provisions of the policy in responding to the question.

In Grier, the underinsured motorist coverage was part of the policy section on uninsured motorist coverage and there was no separate policy section for underinsured coverage. We also noted that the declarations page made no mention of underinsured coverage. We concluded that under those circumstances, the underinsured coverage was part of the uninsured coverage. In this case, however, the underinsured coverage is also part of the uninsured coverage provision and there is no separate section in the policy for underinsured coverage. While the declaration page does reference underinsured coverage, it specifies that there is no separate premium for underinsured coverage as it is included in the

22

uninsured coverage premium, which was the rationale relied upon in Grier.

Therefore, under the rationale of Grier, the underinsured coverage in the policy in question is clearly part of the uninsured coverage and stacking is specifically prohibited by § 33-23-203, MCA.

The majority also distinguishes this Court's recent decision in Chilberg v. Rose (1995), 273 Mont. 414, 903 P.2d 1377, on the grounds that Chilberg was a multiple policy case and did not interpret § 33-23-203, MCA. In Chilberg there were multiple policies since the same insurance company issued separate policies for each vehicle rather than insuring all the vehicles in one policy, as was done in this case. The decision in Chilberg was not dependent on the fact that multiple policies were involved, but rather on the fact that Chilberg, like Leonard in this case, was a stranger to the insurance policies, not being the named insured or a family member. Having never paid any premiums on the policies, nor having any knowledge the policies even existed prior to the accident, this Court ruled that Chilberg should not be able to stack the separate underinsured coverage limits. Chilberg, 903 P.2d at 1380. Like Chilberg, Leonard had no "reasonable expectation" of coverage and, under the rationale of Chilberg, his estate should not be allowed to stack underinsured coverage.

In summary, the majority's strained and restrictive construction of MVLP as used in § 33-23-203, MCA, is contrary to

23

the clear language of the statute and does not take into account the context in which the statute was written. Under the majority opinion, the only stacking prohibited under § 33-23-203, MCA, is for the liability limits for policies issued under the MVSRA for "bad drivers" and uninsured motorist coverage. Since stacking has never been applied to liability coverages,[4] the only type of coverage in Montana for which stacking is prohibited is now uninsured motorist coverage. The plain language of the statute is simply not that narrow.

The practical result of the majority's decision is absurd. Since the majority opinion recognizes the prohibition against the stacking of uninsured coverage limits, if Leonard had been struck and killed by a driver with no liability insurance at all, stacking would not be allowed and the maximum his estate could have recovered under the policy would be $50,000. Under the majority's interpretation, however, since the driver who struck Leonard had the minimum limits, the vehicles under the policy can be stacked and Leonard's estate is entitled to $350,000. Statutes should be read and construed so as to avoid absurd results if a reasonable construction can avoid it. See Christenot v. State (1995), 272

---

[4] See Allstate Insurance Company v. Skorupa (1993), 13 Mont. Fed. Rep. 355, which addressed the issue of stacking liability policies and concluded that this Court has clearly recognized a distinction between liability coverage and uninsured motorist coverage citing Jacobson v. Implement Dealers Mut. Ins. Co. (1982), 196 Mont. 542, 640 P.2d 908, and Chaffee v. United States Fid. & Guar. Co. (1979), 181 Mont. 1, 591 P.2d 1102.

Mont. 396, 901 P.2d 545; Darby Spar, Ltd. v. Department of Revenue (1985), 217 Mont. 376, 705 P.2d 111.

I would therefore answer the certified question presented to this Court in the affirmative and hold that § 33-23-203, MCA, prohibits the stacking of medical payment coverage and underinsured motorist coverage.

_____
Justice

Justice Karla M. Gray, dissenting.

I respectfully dissent from the Court's opinion. While I think the Court does a relatively creditable job of attempting to mesh statutes which simply do not track well, I am unable to join in its analysis.

Plainly stated, the question before us is whether the anti-stacking provision contained in § 33-23-203(1), MCA, is limited to liability coverages required by law or applies to all coverages contained in a vehicle insurance policy. The Court concludes that the statute prohibits only the stacking of required liability coverages, as the Court creatively defines such coverages. It is my view that, while the statute is not a model of clarity, the legislature's intent to more broadly prohibit stacking is apparent therein. On that basis, I would answer the certified question in the affirmative.

The Court begins with the "motor vehicle liability policy" (MVLP) language contained in § 33-23-203, MCA, and looks first to § 33-23-204, MCA, for a definition of that term; that definition is stated as "any policy of automobile or motor vehicle insurance against liability now or hereafter required under Title 61, chapter 6, parts 1 and 3." I agree that this appears to be a rational starting point.

Moreover, I generally agree with the Court's interpretation that the definition of MVLP contained in § 33-23-204, MCA, addresses the third-party per person, per vehicle and property damage liability coverages required by Title 61, chapter 6, parts 1 and 3. Finally, I agree that the first-party med pay and

26

underinsurance coverages at issue in this case are not liability coverages within the definitional parameters of MVLP contained in § 33-23-204, MCA.

That said, it is important to recall that our resolution of the certified question before us turns on the proper interpretation of § 33-23-203, MCA, rather than § 33-23-204, MCA. In my view, it is the Court's attempt to force feed the § 33-23-204, MCA, definition of MVLP into § 33-23-203(1), MCA, that results in a legally flawed and logically inconsistent analysis which disregards the actual language used by the legislature in § 33-23-203(1), MCA.

Inserting the § 33-23-204, MCA, definition of MVLP into § 33-23-203(1), MCA, produces the following rough reading of the first pertinent portion of that statute: "the limits of liability coverage required by Title 61, chapter 6, parts 1 and 3 . . . cannot be stacked." The problem I have with such a reading is that the legislature did not use language even approximating such a reading; it clearly used different words, and words clearly at odds with the Court's interpretation, in § 33-23-203(1), MCA. What the legislature said is that the limits of "insurance coverage available" cannot be stacked. It is my view that, if the legislature had intended to limit the anti-stacking provision to "liability coverage required by law," it could and would have done so. It did not.

A more reasonable interpretation of § 33-23-203(1), MCA, is that the legislature intended precisely what it said: to prohibit stacking of any and all "insurance coverage available" in an automobile insurance policy, including the med pay and

27

underinsurance coverages at issue here. In that regard, I conclude that neither the definition contained in § 33-23-204, MCA, nor that contained in § 61-6-103, MCA, is logically transferable to the "limits of insurance coverage available" language contained in § 33-23-203(1), MCA. Therefore, while the general rule contained in § 1-2-107, MCA, is that definitions contained in one part of the Montana Code Annotated are applicable to the same word or phrase wherever it occurs, I would apply the exception to that rule also contained in § 1-2-107, MCA, and conclude in this case that "a contrary intention plainly appears" with regard to inserting definitions of MVLP into § 33-23-203(1), MCA.

This conclusion is further buttressed by the remaining--and, in my view, largest--barrier to the Court's interpretation of § 33-23-203(1), MCA. The critical portion of the statute reads "the limits of insurance coverage available under any such policy, including the limits of liability under uninsured motorist coverage. . . ." With the Court's definition of "such policy" inserted, the statute reads "the limits of coverage required under Title 61, chapter 6, parts 1 and 3 [the $25,000/$50,000/$10,000 amounts of third-party liability coverage] including the limits of liability under uninsured motorist coverage."

Whether or not one agrees with the Court's creative interpretation that uninsured motorist coverage is actually required by § 33-23-201, MCA, and I do not, an inconsistency results on the face of § 33-23-203(1), MCA, when both the Court's definition of MVLP and the "including" clause are considered. It is clear that nothing in Title 61, chapter 6, parts 1 and 3,

28

requires uninsured motorist coverage; the Court's own analysis makes that clear in pointing out that the § 33-23-204, MCA/Title 61 required coverages are third-party per person, per vehicle and property damage liability coverage. It is equally clear that the "including" clause refers back to what preceded it in the statute-- "such policy"--defined by the Court as the § 33-23-204, MCA, definition of MVLP. The "including" clause simply cannot broaden, by any rule of logic, grammar or law of which I am aware, the statutory definition of MVLP which the Court has inserted into the statute.

For these reasons, it is my view that the Court's analysis is flawed. A more reasonable reading of § 33-23-203(1), MCA, requires a conclusion that the legislature intended to prohibit the stacking of all coverages contained in an automobile insurance policy insuring more than one vehicle. I invite the legislature to revisit the statutes addressed in this case by both the Court and the dissenting opinions with an eye toward clarifying statutes which simply do not mesh well under any analysis.

I dissent.

_____
Justice